```
               THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| **NOEL NORMANDÍA NIEVES,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**THOMAS RIVERA SCHATZ,** *et al.*,<br><br>Defendants. | **CIVIL NO. 09-2297 (JAG)** |

                        OPINION AND ORDER

GARCIA-GREGORY, D.J.

The factual scenario giving rise to this political discrimination action is familiar in Puerto Rico. Thirty-two (32) former employees of the Senate of the Commonwealth of Puerto Rico (the "Former Employees"), their spouses (the "Spouses") and the conjugal partnerships formed between them (the "Conjugal Partnerships")(collectively "Plaintiffs") bring suit against several high ranking officials in the Senate of the Commonwealth of Puerto Rico: President Thomas Rivera Schatz ("Rivera"), Secretary Manuel Torres ("Torres"), Sergeant at Arms Billy Sánchez ("Sánchez"), Chief of Staff of the President Katherine Erazo García ("Erazo"), Secretary of Administration Roberto Maldonado Vélez ("Maldonado"), Human Resources Director Aida Márquez Ibañez ("Márquez") and Auxiliary Services Director Joan

Pulliza("Pulliza")(collectively, "Defendants").[1] (Docket No. 7). Plaintiffs allege that the Former Employees were fired from their jobs because of their Popular Democratic Party ("PDP") membership in violation of 28 U.S.C. § 1983 ("section 1983") and various Commonwealth of Puerto Rico laws.  (Docket No. 7, ¶ 1).

Before the Court are Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 20), Plaintiffs' opposition (Docket No. 23), Defendants' reply (Docket No. 28) and Plaintiffs' sur-reply (Docket No. 33).  For the reasons discussed herein, Defendants' motion is hereby **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The Former Employees were employed by the Senate of the Commonwealth of Puerto Rico. (Docket No. 7, ¶¶ 1, 2a-ff, 4).  The Former Employees occupied various positions such as "Usher," "Telephone Operator," "Chauffeur/Messenger," and "Purchasing

---

[1] The Plaintiffs also bring suit against the Defendants' spouses and the conjugal partnerships formed between Defendants and their spouses. (Docket No. 7, at 2). The Former Employees are: Noel Normandía Nieves, Noemí Normandía Nieves, Juan L. Guardarrama Monzón, Armando Rivera Nieves, Nelsón Fernández Segarra, Jesús Calderón Nieves, Carmen M. Santiago Serrano, Fabián Méndez Rosado, María Vázquez Feliciano, Ricardo J. Burgos Rodríguez, Giovanni Alicea Rolón, Maritza Cordero Román, Manuel Rivera Ruiz, Lynnette Rivera Negrón, Johanny K. Martí Vázquez, Wilfredo Figueroa Molina, Wilfredo Figueroa Toyens, Victor O. Díaz Alvarenga, Elvin M. Mitchell Pérez, Arturo Vera Justiniano, Olvin Dávila Ramos, Pamela M. Rodríguez Hernández, José A. Mangual Lebrón, Gloria E. Ortíz Rodríguez, Anubis Lanzó Molina, Elsa M. Béaz Gutierrez, Anitsa Damoudt Rodríguez, Norma I. Colón González, José Aníbal Velázquez López, Juan Carlos Concepción Soto, Ricardo Luis Ramón Miranda and Francisco Otero Rodriguez. (Docket No. 7, ¶¶ 2a-ff).

Officer." Id.

The Former Employees are active members of the PDP. (Docket No. 7, ¶¶ 3, 18f). They assist political campaigns by participating in meetings, motorcades, walkabouts, fundraisers and being part of candidates' advance teams. (Docket No. 7, ¶¶ 18r, 18o). A few of the Former Employees were electoral college officers. (Docket No. 7, ¶ 18r). While working for the Senate, the Former Employees were often identified as PDP members: employees routinely made comments such as "he/she is a PPD but is a good person."[2] (Docket No. 7, ¶ 18m). Indeed, the Former Employees boarded PDP busses after work wearing political shirts and Senators and their staff observed the Former Employees marching to the Capitol of Puerto Rico in support of a PDP gubernatorial candidate. (Docket No. 7, ¶ 18p-q).

The Former Employees joined an organized group of colleagues composed of PDP members. (Docket No. 7, ¶ 18g). That group often interacted with a group of Senate employees affiliated with the NPP. (Docket No. 7, ¶ 18h). At one event, the NPP and PDP groups held a social gathering, at which the groups attended toting party logos and banners. (Id.). Photos of the event were distributed among Senate employees. (Id.). At another event, PDP and NPP

---

[2]Plaintiff Maritza Cordero Román was nicknamed "Silita" because she resembles and shares the same political affiliation as prominent PDP member Sila María Calderón. (Docket No. 7, ¶ 18s).

employees working in the Senate's Office of Human Resources and Administration met at a restaurant to discuss the looming general election scheduled for November of 2008. (Docket No. 7, ¶ 18t).

The NPP emerged from the November election in control of the Senate. (Docket No. 7, ¶ 1). Defendants, who are NPP members, assumed high ranking positions within the Senate: Rivera became the Senate President, Torres became the Senate Secretary, Sánchez became the Senate Sergeant of Arm, Erazo became Rivera's Chief of Staff, Maldonado became the Senate Secretary of Administration, Márquez became the Human Resources Director and Pulliza became the Senate Auxiliary Services Director. (Docket No. 7, ¶¶ 11-17).

After assuming their posts, Rivera and Erazo told NPP Senators and administrative staff that all employees affiliated with the PDP were to be fired. (Docket No. 7, ¶ 18j). Non-party Senator Roberto Arango ("Senator Arango") told Plaintiff Noel Normandía Nieves that "there are comments that employees are going to be terminated . . . ." (Id.). Senator Arango added that "there are orders from above to make a census of every office identifying where the PDPs were and those PDPs that was there where have their heads cut off [sic]." (Id.). According to the complaint, Senator Arango stated that "the instruction to terminate the PDP employees came from the presidential office . . . ." (Id.). Erazo also called non-party Maria Nater, the supervisor of the Senate's telephone center, to get the names of the telephone center

-4-

employees who support the PDP. (Docket No. 7, ¶ 18u).

The Former Employees were sent letters dated January 5, 2009 informing them that they were fired.[3] (Docket No. 7, ¶¶ 18a, 22, 31, 38, 45, 54, 61, 68, 75, 82, 92, 99, 106, 114, 121, 130, 139, 148, 157, 166, 175, 184, 193, 202, 211, 220, 229, 238, 247, 254, 261, 268, 276). The letters did not state the reason for the terminations. (Docket No. 7, at ¶ 18k). According to the complaint, non-party Senator Héctor Martinez told Plaintiff Noel Normandía Nieves that his termination letter was "an order from" Erazo. (Id.). After the Former Employees were terminated, NPP members were to fill the vacant spots. (Docket No. 7, ¶ 18c-e).

Plaintiffs filed suit pursuant to section 1983 on December 30, 2009 alleging that Defendants violated their rights under the First, Fifth and Fourteenth Amendments of the Constitution. (Docket Nos. 1, 4, 7). On April 26, 2010, Defendants moved to dismiss Plaintiffs' suit pursuant to Fed R. Civ. P. 12(b)(6). (Docket No. 20).

## STANDARD OF LAW

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is

---

[3] The letters stated that the Former Employees were fired retroactively to December 31, 2008.

plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from Twombly and Iqbal a two-pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 12 (internal punctuation omitted). In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or that "Actual proof of those facts is improbable." Id. Finally, the Court assesses whether the facts taken as a whole "state a plausible, not merely a conceivable, case for relief." Id.

In conducting this test, a court must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Ocasio-Hernández, 640 F.3d at 12. Thus, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 13.

## DISCUSSION

The Court's discussion is divided into four (4) parts. First, the Court analyzes whether the Spouses and Conjugal Partnerships have standing to sue under section 1983. Second, the Court

addresses whether Plaintiffs state a claim under section 1983. In the third part, the Court examines whether Defendants' are entitled to qualified immunity. Finally, the Court determines whether it retains supplemental jurisdiction over Plaintiffs' Puerto Rico law claims.

**I.   Section 1983 Standing**

To have standing to sue, a plaintiff must present a concrete, particularized and actual or imminent injury that is traceable to the defendants' alleged conduct and capable of redress by a favorable ruling. Davis v. Fed. Election Com'n, 554 U.S. 724, 734 (2008). Spouses and conjugal partnerships do not have standing to sue under section 1983 unless the defendants' conduct was aimed directly at them or the familial relationship. Robles-Vázquez v. Tirado Garcia, 110 F.3d 204, 206 n. 4 (1st Cir. 1997); Vargas v. Carrión, No. 10–1153, 2011 WL 92030, at *2 (D.P.R. Jan. 3, 2011)(internal citations omitted).

Plaintiffs do not aver that Defendants' conduct was aimed at the Spouses or the Conjugal Partnerships. Rather, the gravamen of Plaintiffs' complaint is that the Former Employees' constitutional rights were violated when Defendants fired the Former Employees. (Docket No. 7, ¶ 1). Thus, the Spouses and Conjugal Partnerships' action brought pursuant to section 1983 is hereby **DISMISSED WITH PREJUDICE.**

**II.   Section 1983 Claim**

To state a claim under section 1983, the Former Employees must plausibly plead that: (1) they were deprived of a constitutional right; (2) "a causal connection between [Defendants' conduct] and the deprivation"; and (3) "state action."  Sánchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009)(citing section 1983); Grajales v. P.R. Ports Auth., 682 F.3d 40, 46 (1st Cir. 2012). Defendants do not dispute that they were acting under the color of state law.  At issue are the first and second elements, whether Defendants caused the Former Employees to be deprived of their constitutional rights.

**A.   Deprivation of Constitutional Rights**

The Former Employees argue that Defendants' violated their rights guaranteed by the First, Fifth and Fourteenth Amendments of the Constitution.  Defendants argue that the Former Employees fail to state a claim under the First and Fourteenth Amendments.[4] (Docket No. 20, at 7-29).

**1.   First Amendment**

The First Amendment protects public employees from being

---

[4] The Fifth Amendment applies only to federal officials. See Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007). We will therefore proceed to examine Plaintiff's due process claims against the officials of the Commonwealth of Puerto Rico under the scope of the Fourteenth Amendment. This approach changes nothing here since the due process guarantees in the Fifth and Fourteenth Amendments are similar in nature and are examined in *pari passu.* See Gerena v. Puerto Rico Legal Services, Inc., 697 F.2d 447, 449 (1st Cir. 1983).

subjected to adverse employment actions as a result of their political affiliations. Ocasio-Hernández, 640 F.3d at 13. A First Amendment political discrimination claim encompasses four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Id. (quoting Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010)). Defendants argue that the complaint does not show a plausible entitlement to relief because it merely contains "conclusory" allegations that parrot the elements of a political discrimination claim. (Docket No. 20, 8-23). The Court disagrees.

The first and third elements are of no moment. The Former Employees plead that "each and every plaintiff is a member of the Popular Democratic Party" and that Defendants are members of the NPP. (Docket No. 7, ¶¶ 3, 11-17); Ocasio-Hernández, 640 F.3d at 13 (holding allegations that "[d]efendants all belong to the NPP," "[e]ach and all plaintiffs are members of the Popular Democratic Party . . . or are believed to be a member of the PDP" and and "each plaintiff 'was not a known member of the New Progressive Party'" sufficient to establish opposing political affiliations.). The Former Employees also allege the archetypal adverse employment action: that they were fired from their jobs. See Elrod v. Burns,

427 U.S. 347 (1976); <u>Branti v. Finkel</u>, 445 U.S. 507 (1980).

The Former Employees also plausibly plead the second element, that the Defendants were aware of their PDP affiliation. A plaintiff may establish the knowledge element by pleading that employees commonly discussed political affiliations. <u>Ocasio-Hernández</u>, 640 F.3d at 15. The Former Employees state that their political affiliations were routinely and openly discussed by Senate employees. (Docket No. 7, ¶ 18h). Indeed, photos were distributed among Senate employees documenting a social event that took place where employees belonging to the NPP and PDP displayed their parties' banners and logos. (<u>Id</u>.). The Former Employees also describe how they were routinely identified as PDP at the event by NPP employees and Senate members: comments were routinely made such as "he/she is a PPD but is a good person." (Docket No. 7, ¶ 18n). Moreover, the Former Employees would leave the Senate wearing clothing that clearly identified their unity with the PDP and were een seen by Senators and their staff marching in support of a PDP gubernatorial candidate. (Docket No. 7, ¶ 18p-q).

The complaint also indicates that Schatz and Erazo actively sought the Former Employees' political affiliation. (Docket No. 7, ¶¶ 18j, 18u); <u>see</u> <u>Ocasio-Hernández</u>, 640 F.3d at 15 (holding that the plaintiffs adequately plead that the defendants knew of their political affiliation where the Defendants actively sought the information in question). According to the complaint, Schatz and

Erazo told NPP senators and administrative staff that all employees identified as PPD members would be terminated. (Docket No. 7, ¶ 18j). Indeed, NPP Senator Arango purportedly told Plaintiff Noel Normandía Nieves that there were "orders from above" to assemble a list of PDP members and fire them. (Id.). Senator Arango also allegedly stated that instructions to terminate the PDP employees came from the "presidential office." (Id.). The complaint also avers that in December of 2008 Erazo had a phone call with the supervisor of the Senate's telephone center, in which Erazo mentioned all the names of the telephone center employees so that the supervisor could identify the PDP members. (Docket No. 7, ¶ 18u).

Finally, the complaint adequately pleads that the Former Employees were discharged because of their PDP membership. A inference of discriminatory animus arises where there is "a politically charged employment atmosphere 'occasioned by the major political shift from the NPP to the PDP . . . coupled with the fact that the plaintiffs and defendants are of competing political persuasions.'"[5] Ocasio-Hernández, 640 F.3d at 17 (citing Acevedo-Díaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993)). As previously mentioned, the Former Employees and the Defendants are members of

---

[5]The complaint must do more than "'[m]erely juxtapose[] a protected characteristic - someone else's politics - with the fact that the plaintiff was treated unfairly.'" Peguero-Moronto v. Santiago, 464 F.3d 29, 25 (1st Cir. 2006)(internal citations omitted).

rival political parties: the Former Employees are members of the PDP whereas the Defendants are NPP affiliates. (Docket No. 7, ¶¶ 3, 11-17). The NPP ascended to power in Puerto Rico shortly before the Former Employees were terminated. (Docket No. 7, ¶ 18a). Moreover, it is axiomatic that the Senate is politicaly charged. Indeed, employees organized groups based on political affiliation (Docket No. 7, ¶ 18g), partisanship was openly and routinely discussed (Docket No. 7, ¶ 18h), employees left the Senate wearing different campaign logos (Docket No. 7, ¶ 17p) and Senators and their staff observed Plaintiffs marching in support of a PDP gubernatorial candidate (Docket No. 7, ¶ 18p-q).

Additional facts alleged in the complaint buttress the inference of discriminatory intent. First, the complaint states that Schatz and Erazo specifically told NPP Senators and administrative staff that all employees affiliated with the PDP were to be axed. (Docket No. 7, ¶¶ 18j-g). Second, the complaint states that the Former Employees do not think that their job performance was evaluated prior to their termination and the termination letters fail to state the reason for their terminations. (Docket No. 7, ¶¶ 7, 18b); see Ocasio-Hernández, 640 F.3d at 17 ("the lack of any plausible alternative justification for the plaintiffs termination makes the inference of political discrimination from the facts alleged more reasonable."). Third, the Former Employees' positions were not contracted - NPP

affiliates were chosen to fill the vacant jobs. See Id.; (Docket No. 7, ¶ 9, 18c, 18d).

Accordingly, the Former Employees plausibly plead all the elements required to state a First Amendment claim.

### 2.    Fourteenth Amendment: Due Process Clause

The Due Process Clause of the Fourteenth Amendment states, in pertinent part, that "nor shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process violation, the Former Employees must plausibly plead that they were: "[1] deprived of a property interest, [2] by [D]efendants acting under color of state law, and [3] without the availability of a constitutionally adequate process." Maymi v. P.R. Ports Auth., 515 F.3d 20, 28 (citing Marrero-Gutiérrez v. Molina, 491 F.3d 1, 8(1st Cir. 2007). Defendants posit that the Former Employees insufficiently plead that they had a property interest in their continued employment in the Senate. (Docket No. 20, 28-29).

Property interests are a product of state law. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); Colón-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir. 2006)(internal citations omitted).  Puerto Rico law grants public career employees a property interest in their continued employment. González-De-Blasini v. Family Dep't, 377 F.3d 81, 86 (1st Cir. 2004). The complaint fails to state that the Former Employees had career

-13-

status.  The complaint lists the positions the Former Employees occupied.  However, at no point do the Former Employees actually state that they are "career" or "permanent" employees.  The Court may speculate that some, if not all, of the Former Employees possessed career status.  Yet, speculation is insufficient at the motion to dismiss stage.  See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Alleging career status is fundamental and facile.  The Former Employees' failure to plead that they have a property interest in their continued employment would typically warrant a dismissal of their claim with prejudice.  See Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000)("Without career status, the plaintiffs do not have a constitutionally protected property interest in continued employment.").  Yet, the complaint contains sufficient indicia that, although short of satisfying the plausibility standard, show that the Former Employees possessed career status.[6]  Thus, in light of the Former Employees' counsel's oversight and the Court's judicial experience, the Court deems it prudent to hold judgment on Defendants' motion to dismiss the Former Employees' procedural due process claim in abeyance.  Those Former Employees' that were career employees may seek leave to

---

[6]For example, a number of the Former Employees were employed by the Senate for a number of years prior to being terminated. (e.g., Docket No. 7, ¶¶ 20, 27, 36, 43).

amend their complaint **on or before August 10, 2012** to reflect their employment status.[7]

### 3.   Fourteenth Amendment: Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment states that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The essence of the Equal Protection Clause is that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).

The thrust of the Former Employees' equal protection claim is analogous to their First Amendment claim: they were fired from their positions because of their PDP membership. (Docket No. 7, ¶ 1). Where, as here, the Former Employees merely frame their First Amendment claim in equal protection nomenclature, the equal protection claim flounders. Uphoff Figueroa v. Alejandro, 597 F.3d 423, 435 n. 8 (1st Cir. 2010)("An equal protection claim alleging political discrimination merely restates a First Amendment political discrimination claim and, as we have said repeatedly, should be considered under the First Amendment.")(internal citations omitted).

Accordingly, the Former Employees claim brought pursuant to

---

[7]The Court reminds counsel that by signing a pleading counsel certifies that the factual contentions pled therein has or will likely have evidentiary support. Fed. R. Civ. P. 11(b)(3).

the Equal Protection Clause is hereby **DISMISSED WITH PREJUDICE**.

**B.   Causation**

To state a claim under section 1983, the Former Employees must plausibly plead that their purported injury "resulted from [1] direct acts or omissions of the official, or [2] from indirect conduct that amounts to condonation or tacit authorization." Ocasio-Hernández, 640 F.3d at 16 (citing Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1st Cir. 2010)).  Thus, "*each* defendant's role in the termination decision must be sufficiently alleged to make him or her a plausible defendant."  Id.

The Former Employees adequately plead that Rivera and Erazo were involved in the termination decision.  After assuming their posts, Rivera and Erazo told NPP Senators and administrative staff that employees affiliated with the PDP were to be fired.  (Docket No. 7, ¶ 18j).  In fact, Senator Arango told Plaintiff Noel Normandía Nieves that there are "orders from above" to make a "census" listing all employees affiliated with the PDP.  (Id.). Senator Arango stated that instructions came down from the "presidential office" to terminate employees affiliated with the PDP.  (Id.).  Additionally, non-party Senator Héctor Martinez told Plaintiff Noel Normandía Nieves that his termination letter was an "order" from Erazo.  (Docket No. 7, ¶ 18k).

The Former Employees also bring suit against Defendants' spouses and the conjugal partnerships formed between the Defendants

-16-

and their spouses. (Docket No. 7). In contrast to the allegations against Rivera and Erazo, the complaint is devoid of any factual allegations linking the Former Employees' alleged constitutional deprivation with the spouses and conjugal partnerships' conduct. Similarly, the complaint does not make any specific allegations regarding Torres, Sánchez, Vélez, Márquez and Pulliza's participation in the termination decision. While it is true that the complaint outlines their positions in the Senate, "liability cannot rest solely on a defendant's position of authority . . . ." Ocasio-Hernández, 640 F.3d at 16 (citing Ayala-Rodríguez v. Rullán, 511 F.3d 232, 236 (1st Cir. 2007). Accordingly, the Former Employees' section 1983 claim against Defendants' spouses and the conjugal partnerships formed between Defendants and their spouses, Torres, Sánchez, Mandonado, Márquez and Pulliza is hereby **DISMISSED WITH PREJUDICE**. The Former Employees' section 1983 claim under a First Amendment theory remain against Rivera and Erazo.

**III. Qualified Immunity**

Defendants argue that they are cloaked with qualified immunity. (Docket No. 20, 26-28). A government official is entitled to qualified immunity if: (1) the Plaintiffs' adequately plead that Defendants violated the Former Employees' constitutional rights; and (2) the constitutional rights at issue were "clearly established" at the time of the alleged violation. Maldonado v. Fontanès, 568 F.3d 263, 268 (1st Cir. 2009); Air Sunshine, Inc. v.

Carl, 663 F.3d 27, 32-33 (1st Cir. 2011).

The Court need not address the qualified immunity issue with regards to Defendants' spouses, the conjugal partnerships established between Defendants' and their spouses, Torres, Sánchez, Mandonado, Márquez and Pulliza because the Former Employees failed to state a cause of action against them. Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005)("The failure of appellant's constitutional claim obviates our need to address the qualified immunity defense: we have found no constitutional violation.").

Although the Former Employees plausibly plead that Rivera and Erazo violated the First Amendment, Rivera and Erazo are not entitled to qualified immunity because the First Amendment right to be free from political discrimination is clearly established. Bisbal-Ramos v. City of Mayaguez, 467 F.3d 16, 25 (1st Cir. 2006); Rodríguez-Marín v. Rivera-González, 438 F.3d 72, 84 (1st Cir. 2006)("Any reasonable official would clearly understand that it is improper to intentionally violate an employee's First Amendment rights."). Therefore, Defendants request for qualified immunity is **DENIED**.

**IV. Puerto Rico Law**

Because the Former Employees state a claim under section 1983 against Rivera and Erazo, the Court retains supplemental jurisdiction over their claims brought pursuant to Puerto Rico

-18-

law.  See 28 U.S.C. § 1367 ("in any civil action over which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case and controversy.").

**V.   Conclusion**

For the reasons discussed above, Defendants' motion to dismiss is hereby **GRANTED IN PART and DENIED IN PART** as follows:

- A.   The Spouses and Conjugal Partnerships' action brought pursuant to section 1983 is hereby **DISMISSED WITH PREJUDICE** for lack of standing.

- B.   The Former Employees' section 1983 claim against Defendants' spouses, the conjugal partnerships formed between Defendants and their spouses, Torres, Sánchez, Maldonado, Márquez and Pulliza are hereby **DISMISSED WITH PREJUDICE** for failure to state a claim.

- C.   The Former Employees' section 1983 claim brought pursuant to the Equal Protection Clause of the Fourteenth Amendment is hereby **DISMISSED WITH PREJUDICE** for failure to state a claim.

- D.   Defendants' motion to dismiss the Former Employees' claim brought pursuant to the Due Process Clause of the Fourteenth Amendment is held in abeyance.  Those Former Employees' that were career employees may seek leave to

amend their complaint **on or before August 10, 2012** to reflect their employment status.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of July, 2012.

<u>S/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge