IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NOEL NORMANDIA-NIEVES, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS RIVERA-SCHATZ, ET AL., <br><br> Defendants. | CIV. NO.: 09-2297(JAG/SCC) |

**REPORT AND RECOMMENDATION**

    The twenty-eight plaintiffs in this case, all of whom were once low-level employees of the Puerto Rico Senate and members of the Popular Democratic Party ("PDP"), all claim that they were fired on account of their political affiliation when the New Progressive Party ("NPP") came to power in 2009. The remaining defendants in this case are Thomas Rivera-Schatz, the president of the Senate at the time of Plaintiffs' firing, and Kathrine Erazo-García, Rivera's chief of staff. Rivera and Erazo have filed motions for summary

judgment, Docket Nos. 127, 129, both of which have been referred to the undersigned for reports and recommendations. Rivera's motion is premised on his lack of knowledge of Plaintiffs and their firings; in this regard, he argues that he delegated personnel matters to Erazo and Roberto Maldonado-Vélez, then the Senate's Secretary of Administration. Erazo likewise disclaims any knowledge of Plaintiffs and their political affiliations. Moreover, both Rivera and Erazo make a *Mt. Healthy* argument, in which they suggest that Plaintiffs would have been fired regardless of their political beliefs on account of a significant staff reduction that the Senate underwent in 2009. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) (holding that even where a plaintiff shows that his termination was motivated by his political affiliation, there is no constitutional violation if the government can show that it would have fired the employee anyway based on constitutional criteria).

After reviewing the motions and their attached statements of facts, as well as Plaintiffs oppositions and counter-statements, it is clear that there are issues of material fact that preclude summary judgment. Rivera and Erazo present evidence that they were unaware of Plaintiffs' political affilia-

tions, that they were unaware of a practice by which political affiliation was determined by an employee's date of hire, and that they were not directly involved in Plaintiffs' firings. Plaintiffs, however, offer much evidence cutting the other way. For example, they provide evidence that Erazo generated Plaintiffs' termination letters. Docket No. 139, ¶ 52.[1] She furthermore had power, delegated by Rivera, to hire and fire employees. *Id.* ¶ 58. There is evidence that Erazo was interested in finding out employees' political affiliations and that she was in fact aware of some of Plaintiffs' political affiliations. *Id.* ¶¶ 77–107.[2] Plaintiffs furthermore offer evidence to rebut

---

1. Defendants purport to qualify this fact, but the deposition testimony relied upon supports the contention that Erazo generated the letters. *See* Docket No. 135-6, at 10.

2. Defendants object to many of these proposed facts, principally on the basis of hearsay. Rather than resolve each of these disputes—most of which can be dealt with at trial—it is enough to note here some of the admissible evidence that Plaintiffs offer on this point. For example, Plaintiff Gloria Ortíz-Rodríguez testified that Erazo knew of her political affiliation from conversations that they had. *See* Docket No. 135-10, at 4–5. Erazo asked Plaintiff Armando Rivera his political affiliation. *See* Docket No. 135-27, at 4. Plaintiff Anitsa Damoudt-Rivera witnessed her supervisor tell Rivera that she was a PDP member. *See* Docket No. 5–6; *see also* FED. R. EVID. 801(d)(2)(D) (statements by an opposing party's employee, made in the course of employment, are not hearsay). Plaintiff Wilfred Figueroa-Molina heard Erazo asking

NORMANDIA-NIEVES v. RIVERA-SCHATZ                                              Page 4

Defendants' claim that they were unaware of the practice whereby political affiliation was determined by hire date; according to Plaintiffs, that practice was well-known and oft-used in the Senate. *Id.* ¶¶ 72–76. Similarly, there is evidence that Erazo conducted a census of PDP employees in the Senate. *See, e.g., id.* ¶ 116.[3] This was a typical practice when a new

---

employees whether there were PDP members in their department. *See* Docket No. 135-29, at 5. Plaintiff Nelson Fernández-Segarra testified that his supervisor, Edgardo Sosa, told him that he was being fired because Erazo and Rivera were getting rid of PDP employees. *See* Docket No. 135-11, at 9; *see also* FED. R. EVID. 801(d)(2)(D).

3. As Defendants note, Elsa Baez's testimony did not conclusively establish that the list she saw was the PDP census, but she did testify that it was a list of positions, organized by offices, that NPP employees were hurriedly working on. *See* Docket No. 135-35, at 2–7. At the time there seem to have been rampant rumors regarding the existence of a census of PDP employees. *See, e.g.*, Docket No. 135-10, at 7 (testimony of Plaintiff Gloria Ortíz-Rodríguez that the census's existence was widely discussed); Docket No. 135-26, at 5 (testimony of Plaintiff Lynette Rivera). Plaintiff Maria Vazquez-Feliciano testified that her supervisor told her that the list included employees' hire dates, to be used as a proxy for political affiliation. *See* Docket No. 135-7, at 3; *see also* FED. R. EVID. 801(d)(2)(D). Plaintiff Nelson Fernández testified that his supervisor, Edgardo Sosa, informed him of the list's existence and that it was ordered by Rivera's office through Erazo. *See* Docket No. 135-11, at 9; *see also* FED. R. EVID. 801(d)(2)(D).

NORMANDIA-NIEVES v. RIVERA-SCHATZ                                    Page 5

administration took over the Senate. *Id.* ¶ 121.[4] In any case, there is evidence to suggest that employees' political affiliations are generally well known and easily discoverable. *See, e.g., id.* ¶¶ 138–42.[5] Finally, there is evidence that Rivera personally directed the removal of PDP employees: he appointed Erazo and delegated to her administrative powers, *id.* ¶ 175; was overheard discussing his intention to remove PDP

---

4.  Defendants object to this proposed fact on the grounds that it is not supported by a record citation, but this is incorrect. *See* Docket No. 135-27, at 9 (testimony of Plaintiff Armando Rivera that censuses were always made when a new administration took power). Defendants also object on hearsay grounds, but the basis of this objection is not clear and so it should be denied.

5.  Defendants object to these facts, largely on the basis of relevance. The facts' relevance is obvious however: they concern the use of Facebook and other methods for discovering Senate employees' political affiliations. They demonstrate that the Senate was a very political environment and that employees' affiliations could be readily determined in various manners. In this sense, the proposed facts undercut Rivera's and Erazo's claims that they were unaware of Plaintiffs' political affiliations. Similarly, testimony from Plaintiffs that political affiliations were not a secret and generally well known are not conclusory; rather, they are statements that a jury could use to judge the credibility of Erazo's and Rivera's statements that they did not know Senate employees' political affiliations.

employees, *id.* ¶ 178;[6] and some of Plaintiffs' supervisors told them that they were being fired because of Rivera's intention to fire PDP members, *see, e.g., id.* ¶ 183.[7]

Given these disputes, it is apparent that an issue of material fact exists regarding whether Defendants were aware of Plaintiffs' political affiliations and whether Plaintiffs were terminated because they were members of the PDP. On these questions there exists a substantial amount of competing testimony, and only a jury can make the credibility

---

**6.** Plaintiff Wilfredo Figueroa-Tollens heard Rivera make a comment to a group of PDP employees that they were all "headed out." *See* Docket No. 135-30, at 5–6. Defendants purport to qualify this comment, but they do so only by reference to things that Erazo said during the same incident. *See* Docket No. 145-1, ¶ 178. None of the objections suggest that Figueroa's account of Rivera's comments are inadmissible.

**7.** Plaintiff Wilfredo Figueroa-Tollens was told by a supervisor that Rivera had an intention to get rid of PDP employees. *See* Docket No. 135-30, at 10. Defendants object to the proposed fact based on this testimony on the grounds that it is inadmissible hearsay. However, anything Rivera said is not hearsay, FED. R. EVID. 801(d)(2)(A) (statements of party-opponents), nor are the statements of his employees made in the course of their employment, FED. R. EVID. 801(d)(2)(D). Thus, both links of the hearsay chain are satisfied and the testimony is admissible. Similarly, Plaintiff Fabian Méndez testified that a supervisor told him that his termination was because of his party membership and that the orders "came from the top." *See* Docket No. 135-21, at 8.

| NORMANDIA-NIEVES v. RIVERA-SCHATZ | Page 7 |
|---|---:|

determinaions necessary to resolve them. As such, summary judgment would be improper. Likewise, though Defendants may be able to ultimately prevail on their *Mt. Healthy* defense, nothing currently in the record compels that result. To be sure, there is substantial record evidence suggesting that some number of Senate employees had to be fired for budgetary reasons; what the record fails to conclusively demonstrate, however, is that these budgetary concerns were the reasons *these* employees—as opposed to others, including NPP employees—were terminated. Indeed, Plaintiffs have brought forth competing evidence tending to show that when Plaintiffs were fired, many were replaced by NPP members, *see, e.g.*, Docket No. 139, ¶¶ 146,[8] 151,[9] 156, or that non-NPP members

---

8. Plaintiff Pamela Rodríguez-Hernández testified that another woman replaced her in her position after her termination. *See* Docket No. 135-14, at 9. As Defendants point out, Rodríguez could not state conclusively that this woman was a NPP member, though Rodríguez understood her to be based on the woman's previous employment. In any case, the fact of Rodríguez's job being filled after her termination undercuts Defendants' *Mt. Healthy* defense.

9. Defendants object in part to this proposed fact based on the anti-ferret rule. However, in the cited deposition testimony, Erazo admits that at least some of Plaintiffs' positions were subsequently re-filled by different employees. *See* Docket No. 135-4, at 19–20.

in similar positions to Plaintiffs did not meet the same fate, *id.* ¶¶ 143, 145,[10] 147,[11] 148, 150, 158. As such, summary judgment must be denied as to Defendants' *Mt. Healthy* defense.

This lawsuit presents a classic case of conflicting testimony and evidence, and it is the sort that only a jury can properly decide. As such, summary judgment is improper, and I recommend that the motions for summary judgment be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st

---

10. Defendants purport to object to this fact, citing the anti-ferret rule. However, the cited testimony supports the confirmed fact. *See* Docket No. 135-24, at 6–7.

11. Plaintiff Juan Concepción testified that he worked in an elevator with an NPP member, who was not terminated at the time that Concepción was. *See* Docket No. 135-17, at 5. Defendants object to the proposed fact based on this statement, calling it irrelevant, but its relevance to their *Mt. Healthy* defense is obvious. For the same reason, Defendants' relevancy objections to the proposed facts in paragraphs 148, 150, and 158 must be denied.

Cir. 1986).

In San Juan, Puerto Rico, this 28th day of July, 2014.

<u>S/ SILVIA CARREÑO-COLL</u>

UNITED STATES MAGISTRATE JUDGE